McMORAN, O'CONNOR & BRAMLEY, PC
Ramshorn Executive Centre
2399 Highway 34
Bldg. D, Suite D-1
Manasquan, New Jersey 08736
(732) 223-7711
bmcmoran@mcmoranlaw.com
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEORGE LISSENDEN, individually and on behalf of all others similarly situated. | Civil Action No.: |
| Plaintiffs, | |
| vs. | **COMPLAINT AND** |
| HARRIS CORPORATION and HARRIS IT SERVICES CORPORATION, | **JURY DEMAND** |
| Defendants. | |

GEORGE LISSENDEN, individually and on behalf of all others similarly situated (collectively "Plaintiffs"), by way of Complaint against defendants Harris Corporation and Harris IT Services Corporation (collectively "Defendants"), say:

### NATURE OF THE CASE

1.     This action is brought by plaintiff George Lissenden ("Lissenden") individually and on behalf of all others similarly situated, to remedy Defendants' violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et. seq.*

## JURISDICTION AND VENUE

2.     The Court has jurisdiction over this action under 28 U.S.C. § 1331 because the action arises under a law of the United States of America, i.e. 29 U.S.C. § 201 *et. seq.*

3.     The Court also has jurisdiction over this action under 28 U.S.C. § 1331 because, on information and belief, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and members of the class of plaintiffs are citizens of a state different than Defendants.

4.     Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in New Jersey.

5.     Lissenden is a resident of the District of New Jersey and worked for Defendants in this district.

6.     A number of the similarly situated plaintiffs reside in the District of New Jersey and work or worked for Defendants in this district.

7.     Defendants regularly conduct business in the District of New Jersey, maintain offices in this district and employ individuals in this district.

## THE PARTIES

8.      Plaintiff George Lissenden ("Lissenden") is a citizen and resident of Toms River, New Jersey and a former employee of defendants Harris Corporation ("Harris") and Harris IT Services Corporation ("Harris IT").

9.      Plaintiff was formerly employed by Defendants for approximately twelve years from October 2002 through July 2014.

10.     Plaintiff worked out of Defendants' offices in Fort Monmouth, New Jersey from October 2002 through September 2011, when Fort Monmouth closed.

11.     From October 2011 through November 2012, Lissenden worked out of his home office in Toms River, New Jersey.

12.     From November 2012 through May 2013, Lissenden temporarily worked out of Defendants' Kentucky offices.

13.     From May 2013 through his termination in July 2014, Lissenden once again worked out of his home office in Toms River, New Jersey.

14.     At all times material to this action, Lissenden was an "employee" of Defendants within the meaning of 29 U.S.C. § 203 within three years preceding the filing of this action.

15.     The similarly situated plaintiffs are current or former employees of Defendants.

16.    At all times material to this action, the similarly situated plaintiffs were "employees" of Defendants within the meaning of 29 U.S.C. § 203 within three years preceding the filing of this action.

17.    Defendant Harris is an international communications and information technology company serving government and commercial markets in more than 125 countries.

18.    Harris is a corporation, organized and existing under the laws of the State of Delaware, with its principal place of business in Melbourne, Florida.

19.    Harris has business locations throughout the United States, including Alabama, Colorado, Florida, Illinois, Louisiana, Maryland, Massachusetts, Nebraska, New Jersey, New York, Texas, Virginia and Washington, D.C.

20.    Harris also maintains business locations throughout the world, including Africa, Australia, Canada, South America, the United Kingdom and the United Arab Emirates.

21.    Harris employs more than 14,000 individuals.

22.    Harris is an "employer" within the meaning of 29 U.S.C. § 203.

23.    Defendant Harris IT maintains its principal place of business in Herndon, Virginia, but does business and employs individuals in a number of states throughout the United States, including New Jersey.

24.    Harris IT is a wholly owned subsidiary of Harris.

25.     Harris IT is an "employer" within the meaning of 29 U.S.C. § 203.

## FLSA COLLECTIVE ACTIONS

26.     The Fair Labor Standards Act ("FLSA") specifically permits collective actions in which putative class members are provided notice of the action and are permitted to opt into the action.  29 U.S.C. § 216(b).

27.     All potential collective action plaintiffs are similarly situated within the meaning of the FLSA to permit efficient adjudication of claims as a collective action.

28.     The similarly situated plaintiffs are current or former employees of Defendants who were subject to a uniform, company-wide policy that violated the FLSA.

29.     Although the precise number of similarly situated plaintiffs is unknown, these persons are known to Defendants, are readily identifiable and can be located through Defendants' records.

30.     There are critical questions of law and fact common to Lissenden and the similarly situated plaintiffs.

31.     The questions of law and fact common to Lissenden and the similarly situated plaintiffs predominate over any question solely affecting individual plaintiffs.

32.     Lissenden's claims are typical of the claims of the similarly situated plaintiffs.

33.     Lissenden has the same interests in this matter as the similarly situated plaintiffs.

34.     Lissenden is an adequate class representative, is committed to pursuing this action and has retained competent counsel experienced in wage and hour law and class/collective action litigation.

35.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy.

## LISSENDEN'S EMPLOYMENT WITH DEFENDANTS

36.     Lissenden began his employment with Defendants in October 2002.

37.     Throughout his employment, Defendants classified Lissenden as a salaried employee exempt from state and federal overtime requirements.

38.     For the last several years of his employment with Defendants, Lissenden held the position of Program Manager Army LOB.  In that position, Lissenden was responsible for the planning, organization, and execution of all program level activities to ensure that objectives were accomplished within contract terms and conditions.  His job duties included project initiation, budget, communications, risk management, staffing and contract deliverables.

39.   At the time of the separation of his employment with Defendants in July 2014, Lissenden had an annual salary of $115,900.

## DEFENDANTS' BILLING POLICY

40.   At any given time, Defendants are engaged in a number of different projects for a number of different clients.

41.   Defendants' largest client is the United States government.

42.   Labor charges are one of the most significant costs in each project. To properly bill its clients for the labor spent on each project, Defendants maintain a "Labor Charging Policy."

43.   The Labor Charging Policy was a centralized, company-wide policy that applied to (1) allegedly exempt, salaried employees and non-exempt, hourly employees below a director level position and (2) all Program Management Directors.

44.   At all times during his employment with Defendants, Lissenden was a billable, salaried employee below a director level position.

45.   The similarly situated plaintiffs are also billable, salaried employees below a director level position.

46.   The Labor Charging Policy required all billable employees, both salaried and hourly, to maintain a timecard to record the time that they worked on each project to which they were assigned.

47. This billed time was called a "Direct Labor" charge.

48. The Labor Charging Policy required these billable employees to record their Direct Labor charges to each project to the nearest one-tenth of an hour, i.e. every 6 minutes.

49. The billable employees recorded their Direct Labor charges to a "charge code," i.e. a specific client billing account number.

50. Defendants' Labor Charging Policy required these employees to sign and submit electronic timesheets every two weeks documenting the accounts to which they billed their Direct Labor charges during the prior two week period.

51. The Labor Charging Policy required all salaried employees to bill a minimum of 80 hours every two weeks, i.e. the amount of hours in their regularly scheduled work week.

52. The 80-hour billable minimum did not apply to hourly, non-exempt billable employees.  Hourly employees did not have a two-week billable minimum.

53. If a salaried employee submitted a timecard with less than the required 80-hour billable minimum, his or her timecard would be automatically rejected by Defendants' electronic billing system.

54. When a salaried employee did not meet the 80-hour billable minimum, i.e. the employee did not have 80 hours of Direct Labor charges, the

Labor Charging Policy required the employee to bill the deficient time to his or her accrued vacation, personal and/or sick leave time (collectively "Paid Time Off").

55. Defendants required these salaried employees to bill the deficient time to their accrued Paid Time Off even when they billed and/or worked a partial day, i.e. less than a full 8 hours.

56. Defendants would then reduce the salaried employee's accrued Paid Time Off accordingly.

57. Pursuant to Defendants' policies, salaried employees are entitled to be compensated for their unused, accrued Paid Time Off when their employment with the Company terminates.

58. If a salaried employee does not have sufficient accrued Paid Time Off to cover his or her deficient hours, Defendants' Labor Charging Policy requires the employee to bill the deficient time to billing code "NWNP," which means "No-Work, No-Pay."

59. Defendants' "No-Work, No-Pay" policy was a uniform, company-wide policy that applied to all billable, salaried employees below a director level position.

60. Defendants' "No-Work, No-Pay" policy applied to Lissenden and the similarly situated plaintiffs.

61.   Defendants' "No-Work, No-Pay" policy applied even when the employee billed and/or worked a partial day, i.e. less than a full 8 hours.

62.   Defendants' "No-Work, No-Pay" policy required salaried employees to bill the deficient hours as "NWNP" even when the employee's failure to bill the 80-hour minimum was not for personal reasons.

63.   Defendants' "No-Work, No-Pay" policy required salaried employees to bill the deficient hours as "NWNP" even when the employee's failure to bill the 80-hour minimum was due to the operating requirements of the business.

64.   In practice, Defendants' "No-Work, No-Pay" policy did not require the employee to get prior, written approval from their supervisor and/or Human Resources to use "No-Work, No-Pay."

65.   Defendants instructed their billable, salaried employees of their "No-Work, No-Pay" policy both verbally and in writing.

66.   Defendants' verbal instructions regarding the use of "No-Work, No-Pay" were often contrary to Defendants' "official" written policy.

67.   The title of the policy, "No-Pay," effectively communicated to these salaried employees that deductions from their compensation would be made if they (i) did not meet the required 80-hour billable minimum and (ii) did not have sufficient accrued Paid Time Off to cover the deficiency.

68.     When salaried employees were forced to bill the deficient hours to "NWNP," Defendants reduced their compensation on a pro-rata basis according to the number of hours that were billed as "No-Work, No-Pay."

69.     For example, if a salaried employee billed 8 hours as "No-Work, No-Pay," Defendants would reduce his or her compensation during that two-week pay period by 10% (8 / 80).

### DEFENDANTS REDUCE LISSENDEN'S COMPENSATION

70.     As a salaried, billable employee, Defendants' Labor Charging Policy, including its "No-Work, No-Pay" policy, applied to Lissenden.

71.     Under the policy, Defendants required Lissenden to bill at least 80 hours of Direct Labor every two weeks.

72.     Due to Lissenden's fluctuating workload after the closure of Fort Monmouth, Lissenden occasionally did not meet the 80-hour billable minimum.

73.     Lissenden's failure to meet the 80-hour billable minimum was a result of the operating requirements of Defendants' business.

74.     When Lissenden failed to meet the 80-hour billable minimum, he billed his deficient time to his accrued Paid Time Off in accordance with Defendants' Policy.

75.     Defendants then reduced Lissenden's accrued Paid Time Off accordingly.

76.     Since Defendants reduced Lissenden's accrued paid time off, Plaintiff was not eligible to be compensated for this time when his employment with Defendants terminated in July 2014.

77.     After he exhausted his accrued Paid Time Off, Lissenden was forced to bill his deficient time to "NWNP" in accordance with Defendants' "No-Work, No-Pay" policy.

78.     Defendants required Lissenden to bill to "No-Work, No-Pay" for days in which Lissenden billed and/or worked a partial day, i.e. less than a full 8 hours.

79.     Defendants' "No-Work, No-Pay" policy required Lissenden to bill the deficient hours as "NWNP" even when his failure to bill the 80-hour minimum was not for personal reasons.

80.     Defendants' "No-Work, No-Pay" policy required Lissenden to bill the deficient hours as "NWNP" even when his failure to bill the 80-hour minimum was due to the operating requirements of the business.

81.     Defendants instructed Lissenden of this policy both verbally and in writing.

82.     Pursuant to its "No-Work, No-Pay" policy, Defendants reduced Lissenden's weekly compensation on a substantial number of occasions.

83.   During the last few years of his employment, Defendants reduced Lissenden's weekly compensation by a total of more than $50,000 pursuant to its "No-Work, No-Pay" policy.

## DEFENDANTS FAIL TO PAY LISSENDEN FOR HIS OVERTIME

84.   Lissenden frequently was employed, worked and/or billed more than 40 hours per week.

85.   Despite reducing Lissenden's compensation when he billed less than the 80-hour billable minimum during a two week period, Defendants failed to compensate Lissenden for his overtime hours when he was employed, worked and/or billed more than 40 hours per week.

86.   In applying its "No-Work, No-Pay" policy, Defendants unlawfully structured Lissenden's compensation to have it both ways, i.e., the Company would (1) reduce Lissenden's compensation when he billed less than 80-hour billable minimum during a two week period; but (2) not pay him for his overtime hours when he was employed, worked and/or billed more than 40 hours per week.

87.   Defendants knew or should have known that its policy of treating Lissenden as an hourly employee so it could reduce his weekly compensation for periods when he did not meet the 80-hour billable minimum, and then deprive him of overtime by treating him as an exempt, salaried employee in weeks when he worked more than 40 hours, was unlawful under the FLSA.

88.    Defendants' "No-Work, No-Pay" policy was a willful violation of the FLSA, as Defendants knew or showed reckless disregard for whether its policy was unlawful under the FLSA.

89.    Lissenden was "employed" within the meaning of 29 U.S.C. § 207 in excess of 40 hours per week for which he was not compensated.

90.    During the last few years of his employment with Defendants, Lissenden *billed* more than 300 hours of overtime for which he was not compensated during his employment.

91.    Lissenden also *worked* considerable overtime hours on behalf of Defendants that were not reflected in his timecards for which he was not compensated.

92.    Because Defendants unlawfully treated Lissenden as a salaried, exempt employee, Defendants did not require Lissenden to clock in and out of work.

93.    Lissenden's actual hours of work can be verified via his billing timecards, electronic key card swipes in and out of a secured work building, secured-access network log-ons, work emails and telephone records.

## DEFENDANTS APPLY THEIR UNLAWFUL NO-WORK, NO-PAY POLICY TO OTHER SIMILARLY SITUATED PLAINTIFFS

94.    As set forth above, Defendants uniformly applied their Labor Charging and "No-Work, No-Pay" policies to all billable, salaried employees, i.e. "similarly situated plaintiffs."

95.    On information and belief, pursuant to their Labor Charging Policy, Defendants reduced the similarly situated plaintiffs' accrued Paid Time Off when they billed their deficient hours to Paid Time Off after they did not satisfy the 80-hour billable minimum.

96.    Due to the reduction in their Paid Time Off, the similarly situated plaintiffs were not eligible to be compensated for this time when their employment with Defendants terminated and/or terminates.

97.    On information and belief, pursuant to their "No-Work, No-Pay" policy, Defendants actually reduced the weekly compensation for similarly situated plaintiffs who were required to bill their deficient hours to "No-Work, No-Pay."

98.    Pursuant to Defendants' "No-Work, No-Pay" policy, all similarly situated plaintiffs were "subject to" a reduction in their weekly compensation if they: (1) failed to meet the 80-hour billable minimum, (2) had exhausted their accrued Paid Time Off; and (3) were therefore required to bill their deficient hours to "No-Work, No-Pay."

## DEFENDANTS FAIL TO PAY THE SIMILARLY
## SITUATED PLAINTIFFS FOR THEIR OVERTIME

99.   These similarly situated plaintiffs were frequently "employed" within the meaning of 29 U.S.C. § 207 in excess of 40 hours per week.

100.   These similarly situated plaintiffs frequently worked and/or billed more than 40 hours per week.

101.   Defendants failed to compensate these similarly situated plaintiffs for their overtime hours when they were employed, worked and/or billed more than 40 hours per week.

102.   Because Defendants unlawfully treated these similarly situated plaintiffs as salaried, exempt employees, Defendants did not require them to clock in and out of work.

103.   The similarly situated plaintiffs' actual hours of work can be verified via their billing timecards, electronic key card swipes in and out of their secured work buildings, secured-access network log-ons, work emails and phone records.

## PLAINTIFFS' DAMAGES

104.   Lissenden and the similarly situated plaintiffs (collectively "Plaintiffs") have suffered and/or will continue to suffer substantial economic losses as a result of Defendants' violation of the FLSA as set forth herein, including lost wages, overtime and the value of their Paid Time Off.

## COUNT ONE

### FLSA: FAILURE TO PAY WAGES AND OVERTIME
(Brought on Behalf of Lissenden, individually, and All Collective Action Members)

105.   Plaintiffs repeat the allegations of the prior paragraphs as if set forth at length herein.

106.   Pursuant to the FLSA, any employee who works more than forty (40) hours in a given workweek is entitled to be compensated at a rate of 1 1/2 times his or her regular hourly rate for every hour worked over forty (40). 29 U.S.C. § 207.

107.   The FLSA provides an exemption from overtime pay for employees who are (i) bona fide executive, administrative, professional and/or outside sales employees <u>and</u> (ii) paid on a "salary basis" of not less than $455 per week.  <u>See</u> 29 U.S.C. § 213.

108.   An employee will be considered to be paid on a "salary basis" if the employee regularly receives each pay period a predetermined amount that is not "subject to" reduction because of variations in the quality or quantity of the work performed.  29 C.F.R. § 541.602(a).

109.   An exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked. 29 C.F.R. § 541.602(a).

110.  An employee is not paid on a salary basis if actual deductions from the employee's predetermined compensation are made for absences occasioned by the employer or the operating requirements of the business.

111.  If an exempt employee is ready, willing and able to work, deductions may not be made from the employee's compensation for time when work is not available. 29 C.F.R. § 541.602(a).

112.  An employer who actually makes improper deductions from its employees' salary shall lose the overtime exemption.  29 C.F.R. § 541.603(a).

113.  An employer also loses the overtime exemption for any employees whose salary is "subject to" deductions, which means there is an employment policy that creates a "significant likelihood" of such deductions.

114.  Similarly, an employer loses the overtime exemption for any employees whose salary "could have been" improperly reduced by the company. C.F.R. § 541.603(b).

115.  Pursuant to Defendants' "No-Work, No-Pay" policy, Defendants made actual deductions from Plaintiffs' compensation on full-day and partial-day basis due to the operating requirements of the business, despite the fact that Plaintiffs were ready, willing and able to work.

116.  Pursuant to Defendants' "No-Work, No-Pay" policy, Plaintiffs' compensation was subject to deductions.

117. Pursuant to Defendants' "No-Work, No-Pay" policy, there is and was a significant likelihood that Plaintiffs' compensation could have been reduced.

118. As a result of Defendants' "No-Work, No-Pay" policy, Plaintiffs were not and are not exempt employees for the purposes of overtime under the FLSA.

119. Plaintiffs regularly worked and/or billed in excess of 40 hours per week.

120. Defendants failed to compensate Plaintiffs for all hours worked and/or billed in excess of 40 hours per week.

121. Defendants, by the above acts, have willfully violated the FLSA, 29 U.S.C. § 207.

122. Plaintiffs have suffered and will continue to suffer substantial economic losses as a result of Defendants' violation of the FLSA.

WHEREFORE, Plaintiffs respectfully request the Court to enter a judgment:

(a)    Declaring the acts and practices complained herein are in violation of the FLSA;

(b)    Declaring that the acts and practices complained of herein are willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a), and as a result, a three year statute of limitations period applies;

(c)    Directing Defendants to make Plaintiffs whole for all unpaid wages and overtime compensation due as a consequence of Defendants' violations of the FLSA, together with interest from the date(s) such wages were due but not paid;

(d)    Directing Defendants to make Plaintiffs whole for the loss of the value of their Paid Time Off that they would have received at the time of the termination of their employment if not for Defendants' violations of the FLSA, together with interest from the date(s) such amounts were due but not paid;

(e)    Directing Defendants to pay Plaintiffs an additional amount of liquidated damages as provided for in 29 U.S.C. § 216(b);

(f)    Awarding Plaintiffs the costs of this action together with reasonable attorney's fees as provided for in 29 U.S.C. § 216(b); and

(g)    Granting such other and further relief as this Court deems necessary and proper.

McMORAN, O'CONNOR & BRAMLEY, P.C.
Ramshorn Office Centre
Building D, Suite D-1
2399 Highway 34
Manasquan, New Jersey 08736
Attorneys for Plaintiffs

By: _____
    BRUCE P. McMORAN

Dated:  April 2, 2015

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b).


## **CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2**

I hereby certify that this matter is not the subject of any other action pending in court or any pending arbitration or administrative proceeding.


McMORAN, O'CONNOR & BRAMLEY, P.C.
Ramshorn Office Centre
Building D, Suite D-1
2399 Highway 34
Manasquan, New Jersey 08736
Attorneys for Plaintiffs

By: _____

BRUCE P. McMORAN

Dated:  April 2, 2015